Gilg v Manzella (2026 NY Slip Op 26035)

[*1]

Gilg v Manzella

2026 NY Slip Op 26035

Decided on March 2, 2026

Supreme Court, Niagara County

Sedita, III, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 2, 2026
Supreme Court, Niagara County

Plaintiff: Kacey Gilg, Individually and as 
 Parent and Natural Guardian of D.B., an Infant

againstDefendants: Roberta A. Manzella, PetSmart, LLC and 
 Ramsey M. Lubecki, as Administrator of the Estate of Kirk Lubecki, Jr.

Index No. E179044/2023

R. COLIN CAMPBELL, ESQ.Counsel for Plaintiffs38 Lake St.Hamburg, NY 14075PATRICK BALKIN, ESQ.Counsel for Defendant Roberta L. Manzella365 Market St.Lockport, NY 14094SETH RUBINE, ESQ.Counsel for Defendant PetSmart, LLC201 West Passiac St., Suite 203Rochelle Park, NJ 07662TARA WATERMAN, ESQ.Counsel for Defendant Ramsey M. Lubecki, as Administrator of the Estate of Kirk Lubecki, Jr.8685 Sheridan Dr.Williamsville, NY 14221

Frank A. Sedita, III, J.

Before the Court are the parties' competing summary judgment motions.
This is a dog bite case. The following facts have been offered, as more fully set forth in the documents referenced in Appendix "A."
Defendant Roberta Manzella adopted a dog from the City of Buffalo Animal Shelter sometime in early 2022 and named it "Hades." Manzella resided with her two children, as well [*2]as two other dogs, when she adopted Hades. Manzella claimed that she was told that Hades was a one-to-two-year-old boxer mix that was good with other animals and good with people. Manzella also testified that Hades was a great dog, friendly, and playful with no history of aggressive behavior.
Manzella arranged for her cousin to "dog-sit" Hades while away on vacation. The cousin testified that Hades was a sweet dog and exhibited no signs of aggressive behavior with people or the many other animals she had in her home.
In October 2022, Manzella decided that Hades was too big for her living arrangements and contacted the late Kurt Lubecki about taking the dog. Lubecki agreed to take Hades on a trial basis.
On October 20, 2022, Manzella brought Hades to Lubecki's home. Lubecki testified that Hades was very friendly and loving with his son and slept with him in his room. The Lubecki family took Hades for public walks and car rides. No instances of aggressive behavior were observed.
On October 23, 2022, Lubecki and his twelve-year-old son took Hades to buy him a leash at PetSmart's Lockport, NY store. PetSmart is a nation-wide chain and so-called "one stop shop" for pet products and services. The company prohibits entry of animals with vicious propensities but permits leashed or safely confined and vaccinated pets inside its stores. PetSmart's Lockport store displays a sign on its entrance door that states, "vaccinated and leashed pets welcome." PetSmart video surveillance footage depicts Defendant Lubecki and his son entering the store with Hades, who is clearly leashed and under control.
Plaintiff Kacey Gilg and three of her children also arrived at PetSmart that day with the intention of buying leashes for their three dogs. Gilg testified that, while in the leash aisle with her children, she observed a man with a leashed dog about six feet away from her. Gilg further testified that the dog — without growling or showing its teeth or displaying any other warning behavior — suddenly lunged at Infant Plaintiff D.B. and bit him in the face. D.B. was transported to the hospital, where he received seven-to-eight stitches.
Lubecki's version of events differs from that of Gilg. Lubecki testified that while he and his son were in the leash aisle, an adult couple were petting and praising Hades and commenting upon his good behavior. Lubecki further testified that Gilg and her children entered the aisle; that D.B. brushed his hand across Hades' head; and, that Hades reacted by biting the child's face.
PetSmart employees responded to the aisle, removed Hades to another location in the store and called for the police and ambulance. The PetSmart employees testified that Hades was not growling or aggressive while under their control. 
Lubecki returned the dog to Manzella. She then returned Hades to the Buffalo Animal Shelter, where he was euthanized.
Plaintiff filed the initial Summons and Complaint seeking to recover for infant D.B.'s injuries on January 23, 2023. All parties have joined issue by the filing of Answers and Counterclaims. Discovery is completed and a Note of Issue and Statement of Readiness has been filed.
All Defendants have filed individual summary judgment motions seeking to have the Complaint dismissed, premised upon two principal contentions: (1) that there is no evidence of any prior vicious propensities, thus prohibiting recovery under a strict liability theory and (2) that there is no evidence of any failure to exercise due care, thus prohibiting recovery under a general negligence theory. Defendant Manzella additionally contends that she was not the owner [*3]at the time of the bite as she had "given" the dog to Defendant Lubecki and that she was not in control of the dog on the date of the incident.
Plaintiff opposes Defendants' summary judgment motions and moves for summary judgment in her favor as against PetSmart. Plaintiff principally contends that PetSmart failed to implement reasonable measures to assess and monitor dogs entering their property; failed to post proper warnings for the public; and, failed to properly train their employees. Plaintiff largely relies upon the opinions contained in the Affirmation of self-described Canine Behavioral Expert Robert Brandau.
Turning to the applicable law, summary judgment permits a party to show, by affidavit or other evidence, that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law (see Brill v. City of New York, 2 NY3d 648, 650-651). The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any genuine, material issues of fact. Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see Winegard v. New York University Medical Center, 64 NY2d 851, 853). However, once a prima facie showing been made, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action (see Alvarez v. Prospect Hospital, 68 NY2d 320, 324-325).
In contrast to evidentiary proof, mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient to defeat a prima facie case for summary judgment (see Justinian Capital SPC v. Westlb AG, 28 NY3d 160, 167). Where an expert fails to provide a factual or scientific basis for his opinion, it is rendered conclusory and insufficient (see Stoklas v Auto Solutions of Glenville, Inc., 9 AD3d 622, 624). Indeed, in the absence of a generally accepted basis in the relevant community, an opinion amounts to nothing more than personal speculation (see Kaczor v Vanchem, Inc., 262 AD2d 1041, 1042).
At the time of this incident, a cause of action for a dog bite could not be premised upon negligence. Within the last year, the Court of Appeals expanded the theories of recovery available to a litigant seeking recovery for harm caused by a domestic animal. Now, a plaintiff who suffers an animal-induced injury has a choice. If the owner knew or should have known the animal had vicious propensities, the plaintiff may seek to hold the owner strictly liable. Plaintiff can also rely on rules of ordinary negligence and seek to prove that the defendant failed to exercise due care under the circumstances that caused plaintiff injury. (see, Flanders v Goodfellow, 44 NY3d 57). 
Under well-settled law, an owner of a domestic animal with actual or constructive knowledge of their animal's vicious propensities will be held strictly liable for harm caused as a result thereof. Knowledge of vicious propensities may be established by proof of prior acts of a similar kind of which the owner had notice, through evidence that it had been known to growl, snap or bare its teeth, or evidence of any behavior that reflects a proclivity to act in a way that puts others at risk of harm. Id.
The law is less well-settled regarding liability under principals of ordinary negligence for both a pet owner and merchants catering to pet owners.
In any common-law negligence case brought pursuant to New York law, a plaintiff must demonstrate: (1) a duty owed by the defendant to the plaintiff (2) a breach thereof and (3) an injury proximately resulting therefrom. The existence and scope of a tortfeasor's duty is a legal [*4]question for the courts. Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists. Thus, the definition and scope of an alleged tortfeasor's duty to a plaintiff is a question of law (see NY Pattern Jury Instr. — Civil 2:10).
The threshold question in any negligence action is whether defendant owes a legally recognized duty of care to plaintiff. Courts traditionally fix the duty point by balancing several factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability (see Hamilton v Beretta U.S.A. Corp. 96 NY2d 222, 232). The depth of a corporate defendant's pockets is not such a factor.
Courts are reluctant to extend liability to a defendant for failure to control the conduct of others. This judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another. Generally, such a duty may arise only where there is a relationship either between defendant and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions, or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others. The key consideration critical to the existence of a duty in these circumstances is that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm and that the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship (see In Re: New York City Asbestos Litigation, 5 NY3d 486, 493-494). In other words, the calculus is such that courts assign the responsibility of care to the person or entity that can most effectively fulfill the obligation of protecting against the risk of harm at the lowest cost (see Stephanie L. v House of the Good Shepherd, 186 AD3d 1009).
While store owners are charged with the duty of keeping their premises in a reasonably safe condition, they are not insurers of a visitor's safety and, as a general rule, they do not have a duty to control the conduct of third persons from harming others (see, Brown v Wal-Mart Stores, 216 AD3d 1390; Aupperlee v Restaurant Depot, LLC, 177 AD3d 940). It has been held that a pet store's animal friendly policy is not inherently dangerous; that an animal friendly pet store has no duty to post warning signs or to "vet" each customer and their pet before entry is permitted (as opined by Plaintiff's self-described Canine Behavioral Expert); and, that an animal friendly pet store meets its duty to protect customers by requiring that all animals be leashed (see, Christian v Petco Animal Supplies Stores, 16 Misc 3d 1114(A), 847 N.Y.S.2d 895, 2007 WL 2116499, 2007 NY Slip Op. 51413(U); aff'd. 54 AD2d 707).
Mindful of the foregoing legal authority, the court makes the following rulings.
Regarding Plaintiff's strict liability claim, the deposition testimony of all of those who had any interaction with Hades was that the dog did not exhibit any aggressive behaviors or vicious propensities. He was characterized as a "good dog" who did not growl, snarl, lunge or bite and who was friendly with people and other animals. Accordingly, all defendants have established a prima facie entitlement to judgment as a matter of law for any claim premised in strict liability.
In opposition, Plaintiff offers the opinions of so-called "Canine Behavioral Expert" Robert Brandau. Much of Mr. Brandeau's opinion, and much of Plaintiff's case theories, are premised upon the assumption that Hades was a "pit bull." While there is testimony in the record [*5]that Hades was a "boxer mix" and/or a "bully mix" and/or a "common mutt," there is little if any evidentiary proof — no breeder testimony, no veterinarian records, no adoption records, no dog registration records, etc. — substantiating Hades' actual breed or mix. Despite the lack of actual proof that Hades was, in fact, a pit bull, Mr. Brandeau opines that: "Based upon my 45-plus years of experience with dogs, I can state with more than a reasonable degree of certainty in the field of canine behavior that 'Hades' the Pit Bull in this case exhibited vicious propensities long before the date of the incident" (NSYCEF Filing #87, ¶35).
While 45-plus purported years of experience with dogs is relevant as to whether Mr. Brandau can offer an expert opinion as to dog behavior, such experience, even if true, does not magically substitute as a factual basis for the opinion itself. It is akin to an attorney citing 45 years of experience when he cannot produce any facts or legal authority to support a legal argument. More to the point, even if there was some proof that Hades was a pit bull, Mr. Brandau's opinion that "Hades the Pit Bull exhibited vicious propensities long before the date of the incident," has no basis in fact and is both speculative and conclusory. As such, his opinions regarding Hades' supposed vicious propensities are insufficient to establish a genuine, evidentiary-based issue of fact for a jury to decide. Accordingly, summary judgment is GRANTED to all defendants on Plaintiff's strict liability claim.
Regarding Plaintiff's negligence claim against Manzella, her duty of care to control Hades ended when she relinquished ownership of the dog to Lubecki. Manzella had nothing to do with the decision to bring Hades to PetSmart and was nowhere near PetSmart at the time of the incident. Even if she had some sort of residual duty of care and somehow breached that duty of care, Manzella has made a prima facie showing that her alleged negligence was not a substantial factor in causing the dog to bite D.B. Plaintiff has also failed to raise a genuine issue of fact that the injury suffered by D.B. proximately resulted from the negligence of Manzella. Accordingly, summary Judgment is GRANTED in Manzella's favor on Plaintiff's negligence claim.
Regarding Plaintiff's negligence claim against the Lubecki Estate, Mr. Lubecki clearly owed a duty of care to control Hades and there are genuine issues of fact as to whether he breached that duty of care (for example, by relinquishing direct control of the dog to his twelve-year-old son while inside the store) and whether such a breach was a substantial factor in causing injury to D.B. Assuming, arguendo, that Lubecki has made a prima facie showing in his favor, Plaintiff has raised genuine issues of fact. Accordingly, summary judgment is DENIED to Defendant Lubecki on Plaintiff's negligence claim. 
Regarding Plaintiff's negligence claim against PetSmart, Plaintiff Kacey Gilg could have most effectively fulfilled the obligation of protecting her child against the risk of harm at the lowest cost. While PetSmart had a limited duty of care to its customers, that duty was satisfied by requiring that all pets, including Hades, be under the control of the pet owner by being safely confined or leashed (see, Christian v Petco Animal Supplies Stores, infra.). Mr. Brandau's opinions to the contrary are of no import because, as previously noted, duty is a legal issue, not a factual one. Accordingly, summary Judgment is GRANTED in PetSmart's favor on Plaintiff's negligence claim.
Plaintiff's summary judgment motion is rendered moot by the above-stated rulings and is DENIED as such.
This matter is next returnable March 11, 2026 at 10:00 a.m. for a virtual trial scheduling conference.
The foregoing shall constitute the Decision and Order of this Court.
Dated: March 2, 2026HON. FRANK A. SEDITA, IIIAPPENDIX A1. Defendant Lubecki's Notice of Motion filed on July 18, 2025 (NYSCEF #31);2. Attorney Affirmation of Tara E. Waterman, Esq. with 9 exhibits including Plaintiff's Bill of Particulars, deposition transcripts and photographs (NYSCEF #32-#41);3. Defendant Petsmart's Notice of Motion filed on July 19, 2025 (NYSCEF #42);4. Attorney Affirmation of Seth B. Rubine, Esq. with 25 exhibits including relevant pleadings and deposition transcripts (NYSCEF #43 - #69);5. Plaintiff's Notice of Cross Motion filed on August 19, 2025 (NYSCEF #71);6. Attorney Affirmation of R. Colin Campbell, Esq. with 14 exhibits including relevant pleadings, deposition transcripts, and Petsmart policies and documents (NYSCEF #72 -#86; #91-#105; #109-#123; #146-#151);7. Affirmation of Robert H. Brandau, ACO with 2 exhibits including a curriculum vitae and Petsmart's Dog Safety Procedure (NYSCEF #87-#89; #106-#108; #124-#126; #152-#153);8. Defendant Manzella's Notice of Motion filed on September 8, 2025 (NYSCEF #144);9. Attorney Affirmation of Patrick M. Balkin, Esq. with 9 exhibits including relevant pleadings and deposition transcripts (NYSCEF #145; #128-#13610. Attorney Affirmation in Opposition to Cross Motion by Tara E. Waterman, Esq. with 6 exhibits including Town of Lockport dog control field report, dog license and correspondence, City of Buffalo Animal View report, a New York State Incident Report and a Niagara County Department of Health report (NYSCEF #154-#160); and11. Attorney Affirmation in Opposition to Cross Motion by Seth E. Rubine, Esq. (NYSCEF #161).